ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Betance Enterprises, Inc. | ) ASBCA Nos. 63076, 63077, 63078 |
| | ) 63079 |
| | ) |
| Under Contract No. W9128F-16-D-0003 | ) |
| Task Order No. W9128F-18-F-0032 | ) |
| Task Order No. W9128F-18-F-0034 | ) |
| Task Order No. W9128F-18-F-0035 | ) |
| Task Order No. W9128F-17-F-0152 | ) |

APPEARANCE FOR THE APPELLANT:  Dennis C. Gardner, Esq.
 Ogletree, Deakins, Nash, Smoak
  & Stewart, P.C.
 Houston, TX

APPEARANCES FOR THE GOVERNMENT:  Michael P. Goodman, Esq.
 Engineer Chief Trial Attorney
 Stacy K. Birkel, Esq.
 Engineer Trial Attorney
 U.S. Army Engineer District, Omaha

OPINION BY ADMINISTRATIVE JUDGE STINSON
ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

These appeals present the issue of which party, under task orders to repair or replace roofing systems, is responsible for the cost of repairing roofs damaged by hailstorms after the contractor began working on the roofs but prior to project completion and issuance of the requisite roof warranties, and prior to government acceptance of the work. Appellant Betance Enterprises, Inc. (BEI), appeals from four contracting officer's final decisions dated August 19, 2021, denying BEI's four claims in the amounts of $701,398.73, $380,993.57, $247,929.46, and $387,458.13, totaling $1,717,779.89, for additional costs incurred to make repairs to roofs damaged by two hailstorms in June and August 2018. We have jurisdiction pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§7101-7109.[1] The parties submitted cross-motions for summary judgment, responses, and reply briefs, for consideration in deciding these

_____

[1] On June 15, 2021, we dismissed appeals of four claims previously submitted by BEI under these task orders for failure to properly certify the claims. *Betance Enters., Inc.*, ASBCA No. 62819 *et al.*, 21-1 BCA ¶ 37,881 at 183,980 (*Betance I*).

appeals.[2]  Appellant also submitted two declarations with attached exhibits.  For the reasons stated below, the Board grants the government's motion for summary judgment and denies appellant's cross-motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1.  On June 26, 2015, the government issued Solicitation No. W9128F-15-R-0016 for a firm-fixed-price Design-Build Single Award Task Order Contract (SATOC) for construction at Fort Carson, Colorado (R4, tab 1).

2.  The solicitation included Federal Acquisition Regulation (FAR) 52.236-4, PHYSICAL DATA (APR 1984), which provides, in part, "(b) Weather conditions shall have been investigated by the Contractor to satisfy himself as to the hazards likely to arise therefrom.  Complete weather records and reports may be obtained from the local U.S. Weather Bureau."  (R4, tab 1 at 0227)

3.  Specification Section 01 35 26, GOVERNMENTAL SAFETY REQUIREMENTS, paragraph 1.13, "FACILITY OCCUPANCY CLOSURE," stated that "[s]treets, walks, and other facilities occupied and used by the Government shall not be closed or obstructed without written permission from the Contracting Officer" (R4, tab 1 at 0313).

4.  On July 10, 2015, BEI submitted a proposal in response to the solicitation (gov't supp. R4, tab 1).  Under Factor 1, Construction Experience, BEI stated:

> Betance has been providing the highest level of design/build construction services concurrently throughout the CONUS including numerous projects in the Western United States, the Rocky Mountain community **and specifically Fort Carson.**
>
> . . .
>
> During the past two (2) years, Betance has successfully completed or is currently working on eight (8) projects

---

[2] The government's motion for summary judgment also included a motion to stay proceedings in these appeals, which appellant did not oppose in its response and cross-motion for summary judgment.  Accordingly, the Board issued an Order dated September 15, 2022, staying proceedings in these appeals.

at Fort Carson Army Post, utilizing the resources and strategies of our proposed management approach.

. . .

WHY CHOOSE BETANCE

• Executed over $11.2M in similar services at Ft. Carson in the past 2 years
• Proven DoD provider – in past 3 years, completed $40M in renovation projects

(Gov't supp. R4, tab 1 at 1642) (emphasis in original).

5. The government awarded SATOC No. W9128F-16D-0003 to BEI on October 29, 2015, for construction at Fort Carson, Colorado, in the maximum amount of $49,000,000 (R4, tab 2 at 0393-94).

6. The contract incorporated by reference FAR 52.236-7, PERMITS AND RESPONSIBILITIES (NOV 1991) (R4, tab 2 at 0409), which provides, in part, the contractor shall "be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract." 48 C.F.R. § 52.236-7.

7. The contract incorporated by reference FAR 52.236-11, USE AND POSSESSION PRIOR TO COMPLETION (APR 1984) (R4, tab 2 at 0409), which provides:

> (a) The Government shall have the right to take possession of or use any completed or partially completed part of the work. Before taking possession of or using any work, the Contracting Officer shall furnish the Contractor a list of items of work remaining to be performed or corrected on those portions of the work that the Government intends to take possession of or use. However, failure of the Contracting Officer to list any item of work shall not relieve the Contractor of responsibility for complying with the terms of the contract. The Government's possession or use shall not be deemed an acceptance of any work under the contract.
>
> (b) While the Government has such possession or use, the Contractor shall be relieved of the responsibility for the loss of or damage to the work resulting from the

3

Government's possession or use, notwithstanding the terms of the clause in this contract entitled "Permits and Responsibilities." If prior possession or use by the Government delays the progress of the work or causes additional expense to the Contractor, an equitable adjustment shall be made in the contract price or the time of completion, and the contract shall be modified in writing accordingly.

48 C.F.R. § 52.236-11.

8. In July 2017, the government issued Solicitation No. W9128F-16-D-0003 RFP 38, Wind Damage Repair Package VI, for roof repairs on Buildings 1160, 1231, 1390, 1680, 2390, 2429, 2605, 6215, 8021, 9249, 9418, R0518B, R0518D, and RG035B (R4, tab 5 at 0475, 0481-0482). In September 2017, the government issued: (1) Solicitation No. W9128F-16-D-0003 RFP 43 for roof replacement on Buildings 1352, 1551, and 1851 (R4, tab 16); (2) Solicitation No. W9128F-16-D-0003 RFP 41 for roof replacement on Buildings 1030 and 1200 (R4, tab 33); and (3) Solicitation No. W9128F-16-D-0003 RFP 42 for roof replacement on Buildings 1526 and 2161 (R4, tab 50). The solicitations for each of these four projects identified a mandatory performance period of 270 days, 270 days, 210 days, and 210 days, respectively, commencing from issuance of the Notice to Proceed (R4, tabs 5 at 0479, 0512 (RFP 38); 16 at 0696, 0732-33 (RFP 43); 33 at 0982, 1016 (RFP 41);[3] 50 at 1222, 1258, 1260 (RFP 42)). The specifications for each solicitation contained nearly identical warranty requirements regarding roof replacement:

The phased installation of the new PVC roof system shall be installed by the contractor in such a manner as to maintain a watertight integrity with positive drainage on a daily basis and possess a Twenty (20) Year, 99 MPH wind, and 1 ½" diameter hail warranty.

The work and materials provided under this task order shall be warranted for one year after the work is accepted, in addition to applicable Manufacturer's extended

---

[3] The front page of RFP 41, Standard For 1442, paragraph 11, and the Statement of Work, paragraph 1.3.1, state that work must be completed within 210 days after issuance of the Notice to Proceed (R4, tab 33 at 0982, 1016). However, paragraph 2.5 of the General Provisions states "[t]he performance period for this project will be 270 calendar days from the Notice" (R4, tab 33 at 1018). Task Order No. 34, issued pursuant to RFP 41, specified a completion date of 210 days after issuance of the Notice to Proceed (R4, tab 34 at 1030; SOF ¶ 11).

4

warranty.  Inspections required to secure a warranty shall be conducted at the contractor's expense. Clean up and remove all damaged materials from site.

(R4, tab 5 at 0509-11; *see also* R4, tabs 16 at 0728, 0730, 0732; 33 at 1014, 1016; 50 at 1255, 1258)[4]

9.  On September 22, 2017, the government awarded a fixed price Task Order W9128F17F0152 (Task Order 52) to BEI in the amount of $1,268,180.55 (R4, tab 6 at 0518).  The scope of work under Task Order 52 was for roof repairs on Buildings 1160, 1231, 1390, 1680, 2390, 2429, 2605, 6215, 8021, 9249, 9418, R0518B, R0518D, and RG035B (R4, tab 6 at 0519-25).  The scope of the project included "design and repair of multiple roofs on Fort Carson which incurred severe damages during a major wind storm in January of 2017" (R4, tab 6 at 0527).  Task Order 52 included a performance period of 315 days (R4, tab 6 at 0529) (setting a period of performance of September 22, 2017 to August 3, 2018).  The government issued the Notice to Proceed on October 10, 2017 (R4, tab 7 at 0534).

10.  On December 12, 2017, the government awarded a fixed price Task Order W9128F18F0032 (Task Order 32) to BEI in the amount of $937,665.65 (R4, tab 17 at 0740).  The scope of work under Task Order 32 was for roof replacement on Buildings 1551, 1851, and 1352 (R4, tab 17 at 0741-42).  The statement of work specified "the complete design and replacement of several roofs on Fort Carson which are experiencing active leaking or show signs of extreme water penetration and damaged to the existing roof membrane" (R4, tab 17 at 0743).  Task Order 32 included the same warranty provisions set forth in its corresponding solicitation (R4, tabs 16 at 0728, 0730, 0732; 17 at 0745, 0747, 0749) and included a performance period of 270 days (R4, tab 17 at 0750-51).  The government issued the Notice to Proceed on January 12, 2018 (R4, tab 18 at 0768).

11.  On December 14, 2017, the government awarded a fixed price Task Order W9128F18F0034 (Task Order 34) to BEI in the amount of $800,147.77 (R4, tab 34 at 1024).  The scope of work under Task Order 34 was for roof replacement on

---

[4] For all intents and purposes, the warranty provisions were nearly identical.  For example, the warranty provision set forth in RFP 42 states:  "[t]he phased installation of the new PVC roof system shall be installed by the contractor in such a manner as to maintain a watertight integrity with positive drainage on a daily basis and possess a Twenty (20) Year (NDL), 99 MPH wind, and 1.5" hail *manufacturer's* warranty *which includes edge metal and flashing* (R4, tab 50 at 1255) (emphasis added to indicate additional language).  Neither party has raised any concern regarding the minor differences in the language contained in these various warranty provisions.

Buildings 1030 and 1200 (R4, tab 34 at 1025). The statement of work specified "the complete design and replacement of several roofs on Fort Carson which are experiencing active leaking or show signs of extreme water penetration and damage to the existing roof membrane" (R4, tab 34 at 1026). Task Order 34 included the same warranty provisions set forth in its corresponding solicitation (R4, tabs 33 at 1014, 1016; 34 at 1028, 1030) and included a performance period of 210 days (R4, tab 34 at 1030). The government issued the Notice to Proceed on January 12, 2018 (R4, tab 35 at 1047).

12. On December 15, 2017, the government awarded fixed price Task Order W9128F18F0035 (Task Order 35) to BEI in the amount of $1,177,804.93 (R4, tab 51 at 1267). The scope of work under Task Order 35 was for roof replacement on Buildings 1526 and 2161 (R4, tab 51 at 1268). The statement of work specified "the complete design and replacement of several roofs on Fort Carson which are experiencing active leaking or show signs of extreme water penetration and damage to the existing roof membrane") (R4, tab 51 at 1269). Task Order 35 included the virtually identical warranty provisions set forth in its corresponding solicitation (R4, tabs 50 at 1255, 1258; 51 at 1272, 1275) and included a performance period of 210 days (R4, tab 51 at 1275, 1277). The government issued the Notice to Proceed on January 12, 2018 (R4, tab 52 at 1292).

13. On June 13, 2018 and August 6, 2018, Fort Carson experienced hailstorms that damaged roof repair and replacement work BEI was performing pursuant to the task orders (R4, tabs 30 at 0821-0822, 0929-31; 38 at 1054; 64 at 1345-46, 1453-55).

14. By letter dated September 10, 2018, BEI submitted an unsolicited proposal under Task Order 34, requesting an extension to the completion date to repair damage to Building 1200 caused by the August 6, 2018, hailstorm "and voided manufacturer's warranties for the materials already placed" (R4, tab 42 at 1059). BEI requested a new completion date of December 20, 2018, "based on receiving the claim release on before [sic] October 12, 2018" (id.). The Government accepted BEI's proposal and executed a bilateral modification (A00001) providing an 86-calendar day, no-cost extension to the completion date, effective September 18, 2018 (R4, tab 37 at 1050). This bilateral modification was signed by the Administrative Contracting Officer on September 11, 2018, and by BEI on September 13, 2018 (id.).

15. By letter dated September 13, 2018, BEI submitted an unsolicited proposal under Task Order 35, requesting an extension to the completion date to repair damage to Buildings 1526 and 2161 caused by the August 6, 2018, hailstorm "and voided manufacturer's warranties for the materials already placed" (R4, tab 59 at 1303). BEI requested a new completion date of December 20, 2018, "based on receiving the insurance claim on or before October 10, 2018[,] for Building 1526 and 2161" (id.).

6

The Government accepted BEI's proposal and executed a bilateral modification (A00001) that provided an 84-calendar day, no-cost extension to the completion date, effective September 24, 2018 (R4, tab 54 at 1295). Both parties signed this bilateral modification on September 17, 2018 (*id*).

16. By letter dated September 19, 2018, BEI submitted an unsolicited proposal under Task Order 32, requesting an extension to the completion date to repair damage caused by the August 6, 2018, hailstorm to Buildings 1352 and 1551 (R4, tab 25 at 0780). BEI requested a new completion date of February 19, 2018, "based on receiving the insurance claim on or before October 10, 2018[,] for B. 1352 and B.1551" (*id*.). The Government accepted BEI's proposal and executed a bilateral modification (A00002) that provided a 123-calendar day, no-cost extension to the completion date, effective September 27, 2018 (R4, tab 20 at 0771). Both parties signed this bilateral modification on September 20, 2018 (*id*.).

17. By letters dated February 11, 2019, BEI submitted, under each task order, requests for equitable adjustment for additional costs incurred because of hailstorms that damaged portions of the roofs being repaired or replaced (R4, tabs 10 at 0549; 27 at 0798; 44 at 1076; 61 at 1321). It is undisputed that appellant ultimately installed the requisite roof systems "and did obtain the 20-year warranty from the roofing system manufacturer" (app. mot. at 18; app. mot. at ex. A, September 12, 2022, Betance decl. ¶ 14).

18. By letters dated February 17, 2019, BEI submitted, under each task order, additional information in support of its requests for equitable adjustment, informing the government that its liability insurance carrier had determined it would not reimburse BEI for hailstorm damage to the roofs, stating, "this event is not a liability insurance claim because Betance had no fault (liability) for the property damage," and that "[t]he event was an act of God, and the damage was not preventable" (R4, tabs 11 at 0551; 28 at 0800; 45 at 1078; 62 at 1323). BEI requested from the government that it not be held liable for the roof damage and be reimbursed for the costs incurred to remove and replace the damaged portions of the roofs (*id*.).

19. By letters dated March 18, 2019, the government denied BEI's requests for an equitable adjustment under each task order, noting that the Government did not change any requirements and stating that if BEI disagreed, BEI could submit a request for a contracting officer's final decision pursuant to FAR 52.233-1, Disputes (R4, tabs 12 at 0570; 29 at 0818; 46 at 1096; 63 at 1342).

20. BEI submitted separate claims under each task order for repair costs it had incurred for roof damage caused by the hailstorms, in the following amounts: Task Order 52, $701,398.73 (R4, tab 3 at 0434); Task Order 32, $380,993.57 (R4, tab 14

7

at 0650); Task Order 34, $247,929.46 (R4, tab 31 at 0936); and Task Order 35, $387,458.13 (R4, tab 48 at 1176).[5]

21.  By letters dated August 19, 2021, the contracting officer issued final decisions denying BEI's claims submitted on each task order (R4, tabs 4, 15, 32, 49).

22.  On October 25, 2021, BEI filed with the Board separate notices of appeal of each final decision.

Declaration of Michael Betance

23.  Michael Betance, President of BEI, states that Fort Carson is (1) "located in the middle of what is known as 'Hail Alley' because this area receives the highest frequency of large hail in North America," (2) that "Colorado can expect three to four catastrophic hail storms every year," and (3) "that in the past ten years, hailstorms in Colorado have caused more than $3 billion in insured hail damage" (app. mot. at ex. A, September 12, 2022, Betance decl. ¶ 8).  Mr. Betance also states that "[g]iven the region's meteorological history, the Corps knew, or should have known, that a roofing specification requiring the system to withstand hail damage from storms with up to 1.5" diameter hail stones was insufficient and thus defective if it expected the Fort Carson roofing systems to actually withstand damage from hail stones in excess of 1.5" diameter" (*id*. at ¶ 9).  Mr. Betance also notes that BEI's corporate office is located in Centennial, Colorado (app. mot. at ex. A, September 12, 2022, Betance decl. p. 1 preamble).[6]

24.  Mr. Betance states that "[t]he Government directed repair of the roofing systems damaged by the hailstorms so that, inter alia, the roofing system manufacturer would issue a 20-year extended warranty as described above," and that "[a]t the time of the hailstorms, work on many of the roofing systems were nearly complete. All of the roofs were fully functioning roofing systems which the Government had beneficial use of on a daily basis" (app. mot. at ex. A, September 12, 2022, Betance decl. ¶¶ 11-12).

---

[5] The copies of these four claim letters contained in the record are undated.  The contracting officer's final decisions responding to these claims state that the letters were received on July 15, 2021 (R4, tabs 4 at 0468; 15 at 0864; 32 at 0970; 49 at 1210).

[6] According to driving directions obtained on Google Maps, Fort Carson is located 64 miles south of Centennial, Colorado, on Interstate 25.

DECISION

I.  Standard of Review

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *First Com. Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003).  "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).  A party challenging a motion for summary judgment "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).  It does not matter that the parties have cross-moved for summary judgment, both claiming that there exists no material issue of fact.  *Osborne Constr. Co.*, ASBCA No. 55030, 09-1 BCA ¶ 34,083 at 168,513 ("[e]ach cross-motion is evaluated separately on its merits, and all reasonable inferences are drawn in favor of the defending party; the Board is not bound to 'grant judgment as a matter of law for one side or the other'" (quoting *Mingus Constructors*, 812 F.2d at 1391)).

II.  Appellant's Cross-Motion is Properly Before the Board for Consideration

Our April 13, 2022, Memorandum of Conference Call and Order, set a deadline for the parties to submit dispositive motions by August 26, 2022, noting that the "deadline purposely is set at least six months prior to the hearing date to allow the Board sufficient time to fully consider any such motions."  The government filed its motion for summary judgment on August 17, 2022, and appellant filed its cross-motion for summary judgment on September 14, 2022.  In a footnote to its cross-motion for summary judgment, appellant recognizes the August 26, 2022, deadline, and states, "[if] necessary, Appellant seeks the Board's leave to file these summary judgment motions" (app. mot. at 5 n.2).  In its reply brief, the government argues that appellant's cross-motion should be denied because it is "untimely" (gov't reply at 2).  According to the government, appellant's cross-motion was "19 days late," stating that "[t]here is nothing in BEI's motion that depended on the filing of the Government's motion, and all alleged facts listed in that motion were known to BEI before the filing of the Government's motion" (*id*.).  Appellant responds, citing our decision in *ABB Enter. Software, Inc. f/k/a Ventyx*, ASBCA No. 60324, 17-1 BCA ¶ 36,586 at 178,202-203, for the proposition that the proper consideration here is whether the "untimely motion would cause prejudice to the other party or was filed in bad faith" (app. reply at 4).

9

The government does not argue that it was prejudiced in any way by the appellant's "late" filing of its cross-motion or that appellant somehow acted in bad faith. Indeed, at the Government's request, we have stayed proceedings in this appeal while the Board considers the parties' cross-motions (a request which appellant did not oppose). As we recognized in our April 13, 2022, Order, counsel for the government previously had informed the Board it was "considering filing a motion for summary judgment," while appellant's counsel informed the Board appellant "does not anticipate filing a dipositive motion." Upon receipt of the government's motion for summary judgment, it seems entirely reasonable for appellant to have decided that it would file a dispositive motion in response and, therefore, submit a cross-motion on issues the government presents in its motion.

Indeed, the Board encourages the filing of summary judgment motions, for, when "[p]roperly employed, summary judgment is a salutary measure designed to 'secure [a] just, speedy & inexpensive determination.'" *Eaton Cont. Servs., Inc.*, ASBCA No. 52888 *et al.*, 04-1 BCA ¶ 32,536 at 160,916, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986). Although submitted after our August 26, 2022, deadline, appellant's September 14, 2022, cross-motion was filed with the Board six months before the current hearing date of March 13-15, 2023. We perceive no prejudice here and see no reason why we should not consider appellant's cross-motion at this stage of the proceedings. Appellant's request for leave to file its cross-motion for summary judgment is granted.

### III. Contention of the Parties

The government requests summary judgment, stating that pursuant to the Permits and Responsibilities clause, BEI is responsible for the work performed until completion and acceptance by the government, and because the hail damage occurred prior to acceptance of the work, BEI was responsible for repairing the damaged roofs so that they qualified for and met the roof manufacturer's warranties (gov't mot. at 8). According to the government, "the Permits and Responsibilities Clause places the risk of loss and damage to work prior to completion and acceptance of the entire contract squarely on the contractor" (*id.*). Specifically, the Permits and Responsibilities clause provides, in part, the contractor shall "be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract" (SOF ¶ 6).

The government also argues it "is not liable for damages caused by an act of God in the absence of a risk-shifting clause, but [an act of God] is considered to be an excusable cause for a failure to perform, entitling a contractor only to a time extension" (gov't mot. at 7). The government also challenges BEI's assertion that the specifications were defective, thereby excusing the risk of loss and damage placed upon the contractor pursuant to the Permits and Responsibilities clause (*id.* at 10).

10

BEI seeks summary judgment, arguing that it is entitled to reimbursement pursuant to its REAs "for extra work it was directed to perform by the Government" (app. mot. at i). As support, appellant claims that the government has violated the implied duty of good faith and fair dealings in two ways, first by filing its motion for summary judgment in these consolidated appeals and filing a motion to dismiss in BEI's previously filed appeals that since have been dismissed by the Board (*id.* at 3). Second, appellant argues it is not "fair dealing" where the Task Orders required (1) installation of roof systems with a 1.5" hail tolerance, (2) in an area where there was a high risk of hail in excess of 1.5" occurring during the project, (3) utilizing "phased construction" to allow the government daily beneficial occupancy, and (4) with the expectation that the contractor "assume the responsibility, all of the risk, and all of the cost for the damage of a hailstorm that exceed the Government specified limit of 1.5" hailstones" (*id.* at 4-5). According to appellant, "[t]he logical interpretation of the specifications is that the Government assumed the risk for meteorological events in excess of the contract specifications and any damage to the roofing systems integrity caused by hailstorms producing greater than 1.5" hailstones would be determined to be outside of the Contract and warranty agreement" (*id.* at 4). Appellant also argues that application of FAR 52.236-11 entitles it to the requested equitable adjustment. In addition, appellant alleges entitlement based upon the doctrines of detrimental reliance, unjust enrichment, quantum meruit, and quantum valebant based upon facts set forth in its "fair dealing" argument, as well as allegations that the government "induced" or "directed" appellant to perform work on the hail-damaged roofs (*id.* at 13, 15, 35-36).

IV. The Permits and Responsibilities Clause Controls the Outcome of These Appeals

A. The Permits and Responsibilities Clause

The Permits and Responsibilities clause provides that a contractor shall "be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract" (SOF ¶ 6). As we held in *Tyler Constr. Co.*, "[t]he general rule under the Permits and Responsibilities clause is that the contractor is responsible for the contract work until it is completed and accepted," and "[i]f work in process is damaged, the contractor's responsibility is to restore it without compensation." ASBCA No. 39365, 91-1 BCA ¶ 23,646 at 118,447[7] (citing *John McShain, Inc. v. United States*, 179 Ct. Cl. 632, 639, 375 F.2d 829, 833 (1967) (contractor responsible for repairs to building caused by broken water main even though contractor's work substantially finished and there remained just minor punch

---

[7] Neither party discusses in their respective briefings our decision in *Tyler Construction* or its import.

11

list items to be corrected); *Joseph Becks & Assocs., Inc.*, ASBCA No. 31126, 88– 1 BCA ¶ 20,428 at 103,326, aff'd 864 F.2d 150 (Fed. Cir. 1988) (table) (appellant responsible for repairs necessitated by fire that damaged materials delivered and work performed where appellant failed to meet its burden of proving defective design directly caused fire).

B.  FAR 52.236-11, Use and Possession Prior to Completion

Appellant argues that, notwithstanding the assignment of risk set forth in the Permits and Responsibility clause, FAR 52.236-11 is dispositive and "controls" this appeal (app. mot. at 7).  Specifically, BEI relies upon paragraph (b) of this clause, which provides, in part, "[w]hile the Government has such possession or use, the Contractor shall be relieved of the responsibility for the loss of or damage to the work resulting from the Government's possession or use, notwithstanding the terms of the clause in this contract entitled Permits and Responsibilities" (*id*.; SOF ¶ 7).  BEI argues that because the government had use and control of the various buildings while their roofs were being repaired or replaced, BEI is relieved of the responsibility for any loss or damage to the work (app. mot. at 7).

BEI's argument ignores the import of the phrase set forth in FAR 52.236-11(b), that "[w]hile the Government has such possession or use, the Contractor shall be relieved of the responsibility for the loss of or damage to the work *resulting from the Government's possession or use*" (SOF ¶ 7)(emphasis added).  Appellant proffers no explanation of how the government's possession or use of the buildings here damaged the work performed by appellant, and, indeed, there is none.  The government's possession or use of the buildings at issue did not cause the roof damage sustained by the hailstorms.  Under these circumstances, the risk of such damage remains on the contractor pursuant to the Permits and Responsibilities clause.

In its reply brief, appellant challenges the government's reliance upon the clause's limiting language regarding "the loss of or damage to the work resulting from the Government's possession or use," stating that the government's argument "is a very narrow and unsupported reading of FAR 52.236-11 and doesn't meet a common sense test under the facts present in this appeal" (app. reply at 6-8).  Appellant again offers no legal support for its attempt to read the clause's restrictive language out of FAR 52.236-11(b).  As an administrative tribunal, "[w]e construe a regulation in the same manner as we construe a statute, by ascertaining its plain meaning." *Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005).  In so doing, we "consider the terms in accordance with their common meaning." *Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir. 1997).  "When there is no ambiguity in the meaning of the regulation, 'it is the duty of the courts to enforce it according to its obvious terms and not to insert words and phrases so as to incorporate therein a new and distinct provision.'" *Tesoro*, 405 F.3d at 1347.  Here, FAR 52.236-11(b) contains

12

no ambiguity. This provision's plain, unambiguous language clearly provides that a contractor is relieved of responsibility for loss or damage to work where it results from the government's possession or use, i.e., where the government's possession or use causes the loss or damage (SOF ¶ 7).

BEI's argument also ignores the import of the phrase set forth in FAR 52.236-11(a) that "[t]he Government's possession or use shall not be deemed an acceptance of any work under the contract" (*id.*). FAR 52.236-11(a) applies equally here. In *Firma Tiefbau Meier*, ASBCA No. 46951, 95-1 BCA ¶ 27,593 at 137,491, we rejected a similar argument alleging government acceptance based upon partial occupancy of a building where roof work was being performed. We held that the contractor's argument "ignores FAR 52.236-11" which provides "in pertinent part: 'The Government's possession or use shall not be deemed an acceptance of any work under the contract.'" *Id.* (citing *Tyler Constr.*, 91-1 BCA ¶ 23,646 at 118,447; *see M.C. & D. Cap. Corp. v. United States*, 948 F.2d 1251, 1255 (Fed. Cir. 1991) ("In the face of this provision [FAR 52.236-11(a)], it is difficult to understand MC &D's argument that the government's taking possession of the work constituted acceptance"). Accordingly, pursuant to the contract's Permits and Responsibilities clause (SOF ¶ 6), the government's use or possession of the buildings during roof repair or replacement did not constitute acceptance of the buildings.

### C. Performance of Task Orders During Traditional Colorado Hail Season

BEI seeks to shift the risk of damage to the projects onto the government by taking issue with how the contract and task orders were structured. Appellant argues, "[i]t is worthy of note that the phased installation to allow continuous use of the buildings by the Government during the roof replacements extended the time to do the roof replacements which concurrently, extended the time the project worksite was exposed to the prospect of adverse weather conditions" (app. mot. at 5 n.2). BEI complains that "the contract specifications on possession and use of the building facilities throughout the contract performance period extended the performance period into the traditional Colorado hail season – risk that was or should have been known to the Government," and that "[t]his is a risk that flowed directly from the Government's contract requirements and a risk the Government should properly assume, not the contractor" (app. reply at 7).

Appellant identifies as an "uncontested fact" the proposition that "[t]he Contract required that the Government have use of the buildings on which new roofs were being constructed at all times, i.e. at the end of each workday the newly constructed roof had to be fully functioning per the Contract specifications" (app. mot. at 9 (citing GSUMF ¶ 2(e))). Appellant then labels, also as an uncontested fact, the suggestion that "[t]he foregoing requirement dictated an incremental construction process with the newly constructed portions of the roofing systems being fully

13

functional and constructed in accordance with the Contract specifications" (*id.* (citing GSUMF ¶ 2(d))).[8]  Although appellant labels these "uncontested fact," we note that contract interpretation is a question of law. *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998).

FAR 52.236-11, specifying the government's use and possession of the buildings during repair, was incorporated into the contract and is a provision to which appellant agreed (SOF ¶ 7).  In addition, the solicitations, and resulting task orders, specified mandatory performance periods for each task order, and for the use of phased construction (SOF ¶¶ 8-12).  Moreover, appellant was required to investigate weather conditions to satisfy it "as to the hazards likely to arise therefrom" (SOF ¶ 2).  From these requirements, BEI was free to determine how best to perform the work in conjunction with these requirements during the time specified, considering factors such as weather.  Moreover, BEI was free to decide, in the first instance, whether even to submit offers in response to the solicitations.  Having agreed to the terms specified in the FAR, the solicitations, and the resulting task orders, appellant cannot now properly argue that the terms were unfair or that they entitle appellant to an equitable adjustment for having to comply with those terms. *Atterton Painting & Constr., Inc.*, ASBCA No. 31471, 88-1 BCA ¶ 20,478 at 103,580, aff'd sub nom., *Atterton Painting Constr., Inc., v. United States*, 865 F.2d 268 (Fed. Cir. 1988) (rejecting contractor's challenge to contract terms as unfair and stating if "contract is 'one-sided,' it is so with appellant's blessing and consent for the contract is a bilaterally-executed document").

The fact that the contract specified the government's right to use and possess the buildings while roof work was ongoing did not somehow shift to the government the risk of weather damage occurring prior to completion and acceptance of the project.  Only after the government accepted the roofs and appellant furnished the requisite warranties for each roof was the task order work complete.  By contrast, under BEI's interpretation, taken to its logical extreme, substantial completion would occur as soon as appellant began work on the roofs because the government occupied the building while work was being performed.  Such an argument strains credulity.

---

[8] GSUMF  ¶ 2 does not refer to "an incremental construction process."  GSUMF ¶ 2(e) references specification section 01 35 26, requiring that "[s]treets, walks, and other facilities occupied and used by the Government shall not be closed or obstructed without written permission from the Contracting Officer" (gov't mot. at 2) (*see* SOF ¶ 3).  GSUMF ¶ 2(d) references the contract specification and task order requirements that "phased installation of the new PVC roof system shall be installed by the contractor in such a manner as to maintain a watertight integrity with positive drainage on a daily basis and possess a Twenty (20) year, 99 MPH wind, and 1 ½" diameter hail warranty" (gov't mot. at 2) (*see* SOF ¶¶ 8, 10-12).

14

To the extent appellant's claim is based upon the government's alleged knowledge of "the traditional Colorado hail season" (app. reply at 7), it seems a self-evident proposition that such weather history is public knowledge. Regardless, Solicitation No. W9128F-15-R-0016 included FAR 52.236-4, which expressly required the contractor to investigate weather conditions and satisfy itself "as to the hazards likely to arise therefrom," noting that "[c]omplete weather records and reports may be obtained from the local U.S. Weather Bureau" (SOF ¶ 2). Moreover, BEI's corporate office is in Centennial, Colorado, just 64 miles north of Fort Carson (SOF ¶ 23). Indeed, BEI's 2015 proposal boasted as part of its construction experience "numerous projects in the Western United States, the Rocky Mountain community **and specifically Fort Carson**," including, in the prior two years, "eight (8) projects at Fort Carson Army Post" and "over $11.2M in similar services at Ft. Carson" (SOF ¶ 4). Mr. Betance, in his declaration, detailed his understanding that Fort Carson is "located in the middle of what is known as 'Hail Alley' because this area receives the highest frequency of large hail in North America," and that "Colorado can expect three to four catastrophic hail storms every year" (SOF ¶ 23). Appellant does not, and cannot, properly allege that it was unaware of the potential for such hailstorms at the project site.

Appellant does not allege that the government held some special knowledge about Colorado weather unknown to BEI, nor would such an argument be availing. *Spirit Leveling Contractors v. United States*, 19 Cl. Ct. 84, 95 (1989) ("Where weather conditions have been such that the contractor was on notice of what type of conditions to expect during contract performance, the situation will not be considered a differing site condition"), citing *Tombigbee Constructors v. United States*, 420 F.2d 1037, 1043, 190 Ct. Cl. 615, 625 (1970) ("If confirmation were necessary that the rainfall prior to November 19 put plaintiff on notice of possible flooding, it was provided by the Weather Bureau records of the rainfall at the Base during the month of November"); *Hobbs Constr. & Dev., Inc*., ASBCA No. 34890, 91-2 BCA ¶ 23,755 at 118,963 (no superior knowledge where information is in public domain and equally available to both parties). We reject appellant's attempt to shift the risk of hailstorm damage to the government prior to project completion and acceptance.

BEI argues that several of the facts set forth in the government's GSUMF constitute "disputed genuine issues of material fact" (app. mot. at 19). Regarding 12 of the 22 statements of fact (1, 3, 4-6, 12-13, 18-22), however, appellant states that "these 'undisputed facts' deal with the formation and content of the Contract and Task Orders and they speak for themselves" (*id*.). This, obviously, does not create a genuine issue of material fact as to those facts. As for the remaining facts proffered by the government, appellant argues that they "contain conclusions or inferences not supported by the Statement or are presented without context leading to an incorrect interpretation" (*id*.). However, arguments regarding the proper conclusions or inferences to be drawn from these facts, or the proper context and interpretation of

these facts, in no way establishes the existence of a genuine issue as to the facts themselves. *Aviation Enters., Inc.*, ASBCA No. 34505, 89-3 BCA ¶ 21,995 at 110,600 ("appellant's mere disagreement is insufficient to create a genuine issue of material fact").

Appellant also alleges the existence of a genuine issue of material fact, stating, "BEI's phased installation work was fully done in accordance with the Contract specifications and at the end of each workday that portion of the roofing system was fully functional and eligible for a twenty-year warranty at that time" (app. mot. at 19-20). BEI characterizes this as an "essential fact [ ] which supports BEI's claims for REAs for being required to perform additional work outside the scope of the Contract for which it is entitled to fair and just compensation" (*id.* at 20). BEI does not specify what makes this a genuine issue of material fact. Appellant points to no record evidence or other citation supporting the idea that the roofing system manufacturer warranted the roofs on a rolling, daily basis, and, indeed, there is none. Even assuming that appellant's work each day was performed in accordance with the contract and the roofing systems remained fully functional, the fact remains that BEI did not receive the requisite warranties from the roof manufacturer. As a matter of law, under the Permits and Responsibility clause, the risk of damage to the property remained with the contractor until the work was completed, the requisite warranties were issued, and the projects were accepted.

### D. Our Decision in *Mike Bradford & Co.* Is Not Dispositive of this Appeal

BEI argues that our decision in *Mike Bradford & Co.*, ASBCA No. 11196, 66-2 BCA ¶ 5,831, "is dispositive of this appeal" - alleging that the facts in this appeal are "perfectly aligned with the *Bradford* situation" (app. mot. at 5, 10). Specifically, appellant argues that, in *Bradford*, the Air Force had possession and use of floodlights installed by the contractor and was found to have "contractually accepted" the light poles "at the time the Government took beneficial possession and use of them" relieving the contractor of responsibility for the destruction of the floodlights by a hurricane that struck before they were formally accepted (*id.* at 9). Appellant relies upon that portion of our decision in *Bradford*, wherein we concluded: "that the poles were constructed according to the contract and were therefore contractually accepted at the time the Government took beneficial possession and use of them," as well as our finding that hurricane "winds at the Base were at least from 140 to 160 mph, and probably more, and that such wind loads were more than poles of a design meeting the contract criteria could resist" (*id.* at 9).

Appellant suggests that *Bradford* applies to the fact situation here "because it acknowledges that final acceptance of a construction project is not dispositive of the Government's avoiding liability for damages to project facilities that have not yet been

16

fully accepted by the Government" (app. reply at 9).[9]  In its reply brief, the government distinguishes the facts in *Bradford*, noting that the contractor had fully performed the contract and was awaiting final inspection and acceptance of the light poles, which was scheduled for the day of the hurricane, and that the Air Force was using the poles without authorization (gov't reply at 12).  Appellant responds, stating, "[t]he Government's attempt to distinguish *Bradford's* facts from this appeal's facts by noting 'the Air Force was using the poles without authorization' is immaterial.  The point is in *Bradford* and in this appeal, the Government had possession and use of the completed portion of the project and, more importantly, the contract specification in this matter required the incremental completion of the roof system on a daily basis." (App. reply at 9 n.3).

Appellant's argument ignores an important distinction between the contract in *Bradford* and the task orders at issue here.  The contract in *Bradford* included a "Guaranty" clause that provided:  "[a]ll equipment furnished under this section of the specifications shall be guaranteed for a period of 1 year from the date of <u>acceptance</u> thereof, <u>either for beneficial use or final acceptance</u>, whichever is earlier, against defective materials, design, and workmanship."  *Bradford*, 66-2 BCA ¶ 5,831 at 27,101 (emphasis in original).  In contrast, the task orders here included a warranty clause stating that "work and materials provided under this task order shall be warranted for one year after the work is accepted, in addition to applicable Manufacturer's extended warranty" (SOF ¶¶ 8, 10-12).  Thus, the guarantee clause in *Bradford* provided that the guarantee became operative from the date of acceptance "either for beneficial use or final acceptance, whichever is earlier."  In contrast, the warranty clause here specified that it became operative only after acceptance.

Moreover, in *Tyler Construction,* which we discuss above, we rejected a similar contractor claim regarding hail-damaged roofing wherein "[a]ppellant assert[ed] that it achieved substantial completion of the roof work before the hail damage, and that at all times during the course of construction, the buildings were occupied and the Government had actual, effective possession and use of the roof."  91-1 BCA 23,646

---

[9] BEI does not allege that the government formally accepted any of the roofs being repaired; instead, appellant argues that "the Government effectively accepted BEI's work incrementally on a daily basis" (app. mot. at 20).  Indeed, Mr. Betance does not state that the roofing systems were complete, rather he admits that "[a]t the time of the hailstorms, work on many of the roofing systems were nearly complete" (SOF ¶ 24).  As such, appellant does not claim the existence of a material issue of fact as to whether the buildings were complete or whether the government had formal acceptance of the project but instead proffers a legal argument that the government, through continued possession and use of the buildings, effectively accepted the roofs as a matter of law.

17

at 118,447. We noted in *Tyler Construction* that "[o]ccupancy of the space by the Government does not necessarily mean that the project or job was completed to the extent that it was ready for its intended use," and that "[i]ndeed, both buildings were occupied throughout performance of the contract." *Id*. (citation omitted). Because the contractor failed to allege that final acceptance had occurred, or did in fact occur, we held "that the cost of repairing the hail-damaged roofs was the responsibility of the contractor" (*id.*). Our decision in *Tyler Construction* applies equally here and certainly is more on point than our decision in *Bradford*.

    E. <u>Act of God</u>

Appellant argues against granting summary judgment in favor of the government, stating, "the law with respect to what constitutes an act of God is not as well settled as the Government in this instance would have us believe and this is an issue best left to a full exposition at trial of BEI's appeal" (app. mot. at 23). Appellant's argument – that the law as to what constitutes an act of God is not well settled – does not present a genuine issue of material fact, rather, it presents an issue of law. Appellant's argument - based upon an issue of law - is insufficient to defeat a motion for summary judgment. *APAC-Southeast, Inc., n/k/a Oldcastle S. Grp.*, ASBCA No. 58057, 12-2 BCA ¶ 35,155 at 172,532 (granting motion for summary judgment that presented an issue of law).

BEI cites the Court of Federal Claims decision in *Liberian Poplar Transps., Inc. v. United States*, 26 Cl. Ct. 223, 226 (1992), for the proposition that "[a]n act of God encompasses only those acts about which the [party asserting an act of God] could have no foreknowledge, could have made no plans to avoid, or could not predict" (app. mot. at 23)[10] However, appellant's reliance upon this decision is misplaced, as it was appellant's liability insurance carrier that deemed the hailstorms to be an act of God and, therefore not reimbursable (SOF ¶ 18). The government denied appellant's claim because contractual provisions assigned the contractor the risk of damage during performance. Moreover, to the extent that the government granted appellant additional time to complete the project after the hailstorms, appellant benefited from this doctrine's application. It is "well-settled that in the absence of some risk-shifting clause in the contract the Government is not liable for damages caused by an act of God." *Praxis-Assurance Venture*, ASBCA No. 24748, 81-1 BCA

_____

[10] BEI cites *Sabine Towing & Transp. Co. v. United States*, 229 Ct. Cl. 265, 269-270, 666 F.2d 561, 564 (1981) for the proposition that "[a]n act of God is defined as occasioned by an unanticipated grave natural disaster") (app. mot. at 23). However, that case concerns interpreting the term "act of God" in the context of how that term was defined in Congressional statute, 33. U.S.C. § 1321, Oil and hazardous substance liability.

¶ 15,028 at 74,356-57.[11]  "While the Government is not liable for damages caused by an act of God in the absence of a risk-shifting clause, an act of God is an excusable cause for failure to perform." *Fraya, S.E.*, ASBCA No. 52222, 02-2 BCA ¶ 31,975 at 157,950, citing *Arundel Corp. v. United States*, 103 Ct. Cl. 688, 711-712 (1945), cert. denied, 326 U.S. 752, reh. denied, 326 U.S. 808 (1945).

Appellant seeks to cast its argument in terms of foreseeability, alleging the existence of "a genuine issue of material fact" based upon statements contained in Mr. Betance's declaration regarding the foreseeability of hailstorms in Fort Carson, of which "the Government knew or should have known" (app. mot. at 23).  However, appellant fails to explain how the government's alleged knowledge of hailstorms in Colorado presents a genuine issue of material fact.  We already have rejected BEI's argument seeking to shift the risk of hailstorm damage to the government, based upon the government's alleged knowledge of the potential for bad weather given Fort Carson's location in "Hail Alley."[12]

F.  Alleged Defective Specifications

Appellant seeks to avoid the import of the Permits and Responsibilities clause, arguing "that the damage or loss [from hailstorms] stems directly from and is attributable to a design defect or defective specifications" (app. mot. at 25).  According to BEI, "the specification for the Fort Carson roofing systems to withstand hailstorms with hailstone diameters up to 1.5" was inadequate to preclude damage from larger hailstones" (*id.* at 26).  In support of its argument, appellant cites our decision in *KOO Constr.*, ASBCA Nos. 61389, 61487, 18-1 BCA ¶ 37,119 at 180,670, in which we noted that to recover under a claim of defective specifications, the contractor must demonstrate that it was misled by the defect, "that it relied on the defect and that the defect was not an obvious omission, inconsistency or discrepancy of significance in other words, a patent defect-that would have made such reliance unreasonable" (app. mot. at 25).

---

[11] An example of a risk-shifting clause in a government contract is the differing site condition clause.  *Serv. Eng'g Co.*, ASBCA No. 40274, 93-1 BCA ¶ 25,520 at 127,133.  We note, however, that "weather occurring during contract performance, no matter how severe, and other acts of God alone do not fall within the provisions of the Differing Site Conditions . . . clause." *Tidewater, Inc.*, ASBCA No. 61076, 18-1 BCA ¶ 37,195 at 181,077.

[12] Indeed, in its reply brief, appellant discusses the well-known occurrence of hailstorms in "Hail Alley," stating that "weather conditions *proved true to form* and large hail was experienced before the entire project was inspected and accepted as fully complete" (app. reply at 2) (emphasis added).

19

Notwithstanding appellant's contrary assertion, the requirement that roofing systems be able to withstand storms with hailstone diameters up to 1.5" was in no way a defective specification. Indeed, it is undisputed that appellant was able to install roof systems as specified in the task orders and "obtain the 20-year warranty from the roofing system manufacturer" (SOF ¶ 17). Moreover, even assuming for the sake of argument that the specification was somehow defective, appellant cannot establish that the defect was not an obvious omission, inconsistency or discrepancy of significance. Appellant was fully aware of the required performance parameters and the conditions under which it had to perform the task order work. *MPG West, LLC*, ASBCA No. 61100 *et al.*, 20-1 BCA ¶ 37,739 at 183,155 (rejecting contractor defective specification argument where contractor could not demonstrate the specification requirement misled it).

The decisions cited by appellant in support of its argument are inapposite. For example, appellant cites *Phillips Constr. Co. v. United States*, 184 Ct. Cl. 249, 394 F.2d 834 (1968), for the proposition that the government is liable for damage to the roofing systems, stating that "the risk for consequences of acts of God does not always lay exclusively on the contractor" (app. mot. at 26). In *Phillips*, the Court of Claims found the government liable for damage to a project caused by heavy rains and the government's defectively-designed site drainage system. Here, the damage to the project was caused by hailstorms, not by a defective government design. As such, BEI's reliance upon *Phillips* is misplaced.

BEI also cites *G & C Enters., Inc. v. United States*, 55 Fed. Cl. 424, 428-29 (2003), for the proposition that the government is "not entitled to summary judgment predicated on the 'rights and responsibilities' provision because the appellant [G & C] was entitled to establish at trial that the Army made an express or implied warranty as to the project specifications, that those project specifications were defective, and that their inadequacy caused the damage to the hanger and fuel dock" (app. mot. at 26). However, in *G & C Enters.*, the court granted partial summary judgment to the government, holding that the contractor had not established "that a dispute exists as to whether the risk of loss rested with the Army at the time of the storm," and had "not cited to precedent that would reinforce its position, nor [had] it pointed to any contract provision that suggests risk of loss passes to the Army upon mere use of the project facilities." 55 Fed. Cl. at 428.

Regarding the contractor's claim of a breach of warranty regarding the sufficiency of the specifications, the court found a material issue of fact and, accordingly, denied that portion of the government's summary judgment motion. 55 Fed. Cl. at 429. Here, however, appellant has not alleged a breach of the implied warranty of the specifications, let alone established that the specifications here were design specifications. *Am. Ordnance LLC*, ASBCA No. 54718, 10-1 BCA ¶ 34,386 at 169,780 (implied warranty of the accuracy of design specifications which "describe

20

in precise detail the materials to be incorporated and the manner in which the work is to be performed").[13] Rather, appellant's argument is based upon the assertion that the specifications were "defective because they did not account for the meteorological history of the project site area and their inadequacy lead ultimately to the damage to the roofing systems" (app. mot. at 33). As we already have held, this alleged "defect" was readily apparent to appellant when it sought award of the various task orders, and, accordingly, BEI cannot properly rely upon it now as a basis for additional costs incurred in the performance of the task orders. *Radcliffe Constr. Co.*, ASBCA No. 39367, 92-1 BCA ¶ 24,467 at 122,032 (contract not defective regarding required notch depth in masonry wall where "reasonably experienced contractor could have, and should have, been able to readily identify the required notch depth by reviewing the contract's pertinent provisions").

BEI also relies on our decision in *Boeing Co.*, ASBCA No. 18916, 74-2 BCA ¶ 10,976 at 52,232 (a contract for aircraft repair), stating that the contract at issue "was interpreted to provide for compensation for the storm damage repairs although the aircraft had not been finally accepted at [sic] the damage occurred" (app. mot. at 27). However, the contract in that appeal included a clause providing that the government's assumption of risk "shall not extend to the first $1,000 of loss or damage resulting from each event separately occurring" 74-2 BCA ¶ 10,976 at 52,231. The Board held that "appellant's method of applying the $1,000 deduction is in accordance with a proper construction of the requirements of the clause." 74-2 BCA ¶ 10,976 at 52,233. The government was found liable for the remaining amount. That is not the situation presented here, as the task orders contained no similar risk-shifting provisions based upon payment of an initial monetary deduction.

---

[13] On this issue, BEI alleges only that its complaint "raises the issue of the Government's knowledge and conduct vis-à-vis the design specifications and anticipated weather conditions sufficient to warrant a full exposition of the facts at trial of this appeal" (app. mot. at 28). However, appellant's complaint contains no such allegation that the task orders contained design specifications and, indeed, the term "design specification" is not included in the complaint. Appellant's allegation regarding design specifications is supported only by argument of counsel, something that is insufficient to "warrant a full exposition of the facts at trial of this appeal" (*id*); *see LTV Aerospace & Def. Co.*, ASBCA No. 37571, 89-3 BCA ¶ 22,249 at 111,820 ("We have traditionally taken a dim view of motions which rest on factual matters supported only by argument of counsel . . . . Appellant's motion must fail for this reason alone").

V. The Government Did Not Violate the Common Law Doctrine of Good Faith and Fair Dealing

A. The Government's Motions Practice

BEI argues that the Board should deny the government's motion for summary judgment, stating that the government's actions violated "the concepts of good faith and fair play" (app. mot. at 2). Specifically, BEI suggests that the government has endeavored to short-circuit the Board's process and procedures for resolving CDA disputes "by misrepresenting the nature and substance of Appellant's appeal and pressing for a favorable disposition of the appeal at a very early stage before the record in this matter has had a chance to be fully developed" (*id.* at 3).[14] As support, BEI cites the government's motion to dismiss for failure to state a claim upon which relief can be granted – which the government filed in the previous appeals and the Board denied as moot on jurisdictional grounds because appellant had failed to certify its claims *(id.* at 3-4; see *Betance I* at 183,980). Appellant also cites the government's pending motion for summary judgment (*id.* at 3).

The sting of appellant's arrow is somewhat dulled, however, by the fact that BEI now has submitted a cross-motion for summary judgment during what remains, at least according to appellant, "a very early stage" of the proceedings and requested leave to file its motion, which we now have granted. As noted above, summary judgment is appropriate as "a salutary measure designed to 'secure [a] just, speedy & inexpensive determination.'" *Eaton Cont. Servs., Inc.*, 04-1 BCA ¶ 32,536 at 160,916.

The same is true regarding the government filing a motion to dismiss for failure to state a claim. FED. R. CIV. P. 12(b)(6) recognizes a party's right to file a motion for failure to state a claim upon which relief can be granted. In our previous decision, we noted that "[a]lthough our rules do not explicitly contemplate this type of motion, we do entertain them in accordance with the provision in our Rule 7(a) 'to secure, to the fullest extent practicable, the informal, expeditious and inexpensive resolution of appeals.'" *Betance I*, at 183,979 (quoting Board Rule 7(a), citing *Kandahar Mahali Transit Forwarding Ltd.*, ASBCA No. 62319, 20-1 BCA ¶ 37,635 at 182,725; see *Sauer Inc.*, ASBCA No. 62395, 22-1 BCA ¶ 38,080 at 184,927 ("Board Rule 7, which sets forth guidance regarding our motions practice, does not specifically list motions to

_____

[14] We note that appellant did not oppose the government's request to stay proceedings while the Board considered the parties' cross-motions, nor did it suggest that discovery was needed to support its opposition to the government's motion for summary judgment. *Dongbuk R&U Eng'g Co.*, ASBCA No. 58300, 12-1 BCA ¶ 35,389 at 173,638-639 (FED. R. CIV. P. 56(d) "requires that a nonmoving party state, by affidavit, the reasons why discovery is needed in order to support its opposition to a summary judgment motion").

dismiss for failure to state a claim, although we do consider such motions"). "Dismissal for failure to state a claim upon which relief can be granted is appropriate where the facts asserted in the complaint do not entitle the claimant to a legal remedy." *Parsons Gov't Servs., Inc.*, ASBCA No. 60663, 17-1 BCA ¶ 36,743 at 179,100 (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The government's filing of these motions, clearly permitted by the Federal Rules and this Board's practice and procedures, is in no way evidence of the government's violating the concepts of good faith and fair dealing.

B. The Government's Conduct During Project Performance

Appellant alleges "[i]t is not 'fair dealing' when the Government; (1) requires the contractor to install roof system with 1.5" hail tolerance, (2) requires the roof system to be part of a 'phased construction' so that the new roofing can be essentially part of a 'completed' roof system on a daily basis so that the Government can receive the daily beneficial occupancy and the daily protection from the elements that the roof system provides (3) has prior knowledge that there is a reasonable probability based on recorded history, and therefore a high risk of hail in excess of 1.5" occurring during the period of construction; and then, expects the contractor to assume the responsibility, all of the risk, and all of the cost for the damage of a hailstorm that exceed the Government specified limit of 1.5" hailstones" (app. mot. at 4-5). In essence, appellant argues that it was not fair for the government to issue task orders written in the manner in which they were written, with the attended contractual requirements and obligations assigned thereto, which then were agreed upon by the contractor.

We already have addressed this allegation in the context of the contract's requirements, the task orders, and the manner in which these documents established the legal responsibilities of the parties and assigned the accompanying risk. Having agreed to the terms specified in the FAR, the solicitations, and the resulting task orders, appellant cannot now properly argue that the terms were unfair or that the government violated the doctrine of good faith and fair dealing. Although "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement," *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (citation omitted), it is not a violation of the doctrine of good faith and fair dealing for the government to enforce the contract as written. *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010) ("The implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions").

Appellant also argues that the government violated the doctrine of good faith and fair dealings because BEI first sought recovery through an insurance claim, then

23

submitted requests for equitable adjustment pursuant to procedures outlined in the contract and task orders (app. mot. at 5). According to BEI, the government's failure to act in good faith and fair dealing "is the heart of this dispute," stating "[r]ather than engage in good faith discussions about the equities of the hailstorm roof repair cost compensation, the Government continues to assert a very narrow interpretation of the relevant law and an incomplete or inaccurate recitation of the facts applying that law in order to avoid paying BEI the fair value for the extra work it was required to perform" (app. reply at 1-2).

"The covenant of good faith and fair dealing ... imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). It is not a violation of this duty for the government to suggest that the contractor follow the contractual procedures and requirements for submitting equitable adjustment requests but ultimately decide to deny the request. If such action by the government were a violation of the duty of good faith and fair dealing, the government would violate that duty every time it notified a contractor of its contractual right to submit a request for equitable adjustment and subsequently denied the request. Obviously, that cannot be the case.

### VI. BEI Has Not Established Entitlement Based Upon Doctrines of Detrimental Reliance, Unjust Enrichment, Quantum Meruit, and Quantum Valebant

Appellant's motion devotes less than two pages to its alleged entitlement based upon the doctrines of detrimental reliance, unjust enrichment, quantum meruit, and quantum valebant, suggesting that BEI was "induced by the Project Officer to undertake repairs" and "the Government directed the Appellant to perform additional work to repair the storm damage" (app. mot. at 35-36).[15] Regarding detrimental

---

[15] Appellant alleges that the government "directed" it to repair the roofing systems damaged by the hailstorms (app. mot. at 1, 10, 13, 17-18, 36), citing as support the declaration submitted by Mr. Betance (*id.* at 9-10, 13, 17-18). Paragraph 11 of his declaration states, "[t]he Government directed repair of the roofing systems damaged by the hailstorms so that, inter alia, the roofing system manufacturer would issue a 20-year extended warranty as described above" (SOF ¶ 24). Appellant offers no other record evidence in support of its allegation that the government directed the performance of the repair work, other than Mr. Betance's conclusory statement, which, by itself, is insufficient to create a genuine issue of material fact. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1564 (Fed. Cir. 1987) ("Mere conclusory statements and denials do not take on dignity by placing them in affidavit

reliance, appellant dedicates one paragraph to this theory in its motion for summary judgment. Appellant argues, without record citation, that "it was induced by the Project Officer to undertake repairs to the storm damaged roofing systems before responsibility for paying for the storm damage repairs was established" (app. mot. at 35). Appellant fails to explain how this allegation falls within the purview of detrimental reliance. Appellant fails to identify the "Project Officer," to whom the alleged directions were conveyed, and what specifically was said. Appellant's argument also ignores that the contract and task order requirements placed the risk of loss and damage to the project prior to completion and acceptance squarely upon the contractor. Indeed, as we already have found based upon the express terms and conditions of the contract and task orders, appellant is not entitled to relief. The government notes that neither appellant's claim submitted to the contracting officer, nor the complaint, raised this legal theory (gov't reply at 13). Accordingly, it is questionable whether the claim is properly before us now. Even assuming we had jurisdiction to consider the claim, appellant has failed to allege facts necessary to establish that it somehow relied to its detriment upon the government's actions or is entitled to recovery based upon this theory.

Regarding unjust enrichment, quantum meruit, and quantum valebant, appellant cannot properly rely upon these equitable doctrines to justify payment by the government. *Jack D. Higgins*, ASBCA No. 33086, 87-3 BCA ¶ 20,132 at 101,924 ("The doctrine of unjust enrichment is an equitable doctrine applied to those situations where the rights and liabilities of the parties are not defined in a valid contract"); *Relyant Glob. LLC*, ASBCA Nos. 63024, 63257, 22-1 BCA ¶ 38,205 at 185,539 ("Recovery in *quantum meruit* or *quantum valebant* is typically based on an implied-in-law contract, a type of claim that we lack jurisdiction to consider") (emphasis in original).

VII. The Government's Affirmative Defense of Accord and Satisfaction

Because we find in favor of the government on the issue of appellant's obligations and responsibilities imposed upon it pursuant to the contract and the task orders to repair the hail-damaged roofs and provide the requisite roof warranties, we need not consider, and do not reach, the government's accord and satisfaction argument, or appellant's responses and various affirmative defenses to that argument.

---

form"); *Anis Avasta Constr. Co.*, ASBCA No. 61926, 20-1 BCA ¶ 37,743 at 183,164 ("the burden on the movant is not to produce evidence showing the absence of a genuine issue of material fact, but to point out that there is an absence of evidence to support the nonmoving party's case").

<u>CONCLUSION</u>

We have considered appellant's remaining arguments and find they have no merit. The government's motion for summary judgment is granted and appellant's cross-motion for summary judgment is denied. Accordingly, the appeals are denied.

Dated: January 25, 2023

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63076, 63077, 63078, 63079, Appeals of Betance Enterprises, Inc., rendered in conformance with the Board's Charter.

Dated: January 25, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals